**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Subpoena Served on Apex Fund Services<br><br>CAMSHAFT CAPITAL FUND, LP;<br>CAMSHAFT CAPITAL ADVISORS, LLC;<br>and CAMSHAFT CAPITAL MANAGEMENT,<br>LLC,<br><br>              Applicants/Defendants,<br>   v.<br><br>BYJU'S ALPHA, INC.,<br><br>             Respondent/Plaintiff. | Case No: 1:24-mc-00171-ALC<br><br>(Arising from Case Nos. 24-10140<br>(JTD) and 24-500013 (JTD) in the<br>United States Bankruptcy Court For<br>the District of Delaware) |

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO CAMSHAFT'S**
<u>**MOTION TO QUASH DEBTOR'S NON-PARTY SUBPOENA**</u>

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND ...........................................................................................................................4

I.     The Debtor Defaulted On The $1.2 Billion In Term Loans. ...............................................4

II.    Camshaft Facilitated At Least Three Fraudulent Transfers Of The Debtor's Money. ...................................................................................................................................5

III.   Camshaft Refused To Disclose Highly-Material Information About The Alpha Funds Despite Being Ordered To Do So And Being Held In Contempt Of Court. ............6

IV.   The Debtor Issued The Apex Subpoena To Finally Locate The Alpha Funds. ..................8

LEGAL STANDARD ....................................................................................................................9

ARGUMENT ................................................................................................................................9

I.     Movants Fail To Establish Legitimate Confidentiality Concerns. .....................................9

II.    The Subpoena Seeks Plainly Related Information And Is Not Overbroad. ......................12

III.   The Pending Motions To Dismiss Do Not Stay Discovery, Let Alone Justify Quashing the Subpoena. ...............................................................................................15

CONCLUSION ............................................................................................................................17

## <u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Cases**</u>

*In re Accent Delight Int'l Ltd.*,
   791 Fed. App'x 247 (2d Cir. 2019)........................................................................12

*In re Ex Parte Application of Kleimar N.V.*,
   220 F. Supp. 3d 517 (S.D.N.Y. 2016)...................................................................11

*Arias-Zeballos v. Tan*,
   2007 WL 210112 (S.D.N.Y. Jan. 25, 2007) .....................................................11, 14

*In re Currency Conversion Fee Antitrust Litig.*,
   2004 WL 848171 (S.D.N.Y. Apr. 21, 2004).........................................................12

*In re Madison Williams & Co., LLC*,
   2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014)..................................................11

*Malibu Media, LLC v. Doe*,
   2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) .......................................................15

*Malibu Media, LLC v. Doe*,
   2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016).....................................................9, 15

*Medina v. City of New York*,
   2020 WL 3050971 (S.D.N.Y. June 8, 2020) .......................................................16

*In re Nielsen Co. (US), LLC*,
   2020 WL 6130674 (S.D.N.Y. Oct. 16, 2020) ....................................................9, 10

*Oasis Med., Inc. v. I-Med Pharma USA Inc.*,
   2023 WL 6301728 (S.D.N.Y. Sept. 1, 2023).................................................9, 10, 12

*Ohio Dep't of Ins. v. RPM Mortg.*,
   2020 WL 8513150 (S.D.N.Y. Dec. 2, 2020) ..........................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).............................................................................................15

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
   2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014).......................................9, 10, 11, 15

*Reserve Solutions, Inc. v. Vernaglia*,
   2006 WL 1788299 (S.D.N.Y. June 26, 2006) ......................................11, 13, 14, 15

*Silverstone Holding Grp. v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*,
    650 F.Supp.3d 199 (S.D.N.Y. Jan. 12, 2023) ........................................................12

*In re Vaso Active Pharms., Inc.*,
    2012 WL 4793241 (Bankr. D. Del. 2012) ............................................................14

*Zou v. Han*,
    2024 WL 707285 (E.D.N.Y. Feb. 21, 2024)...........................................................16

## **Statutes and Rules**

11 U.S.C. § 1112(b) ...........................................................................................................7

Fed. R. Civ. P. 45 ........................................................................................9, 11, 12, 15, 16

Fed. R. Civ. P. 45(a)(1)(A)(iii) ........................................................................................9

Fed. R. Civ. P. 45(d)(3)(B)(i) ...................................................................................10, 11

Fed. R. Civ. P. 26(b)(1)..............................................................................9, 11, 15, 16

BYJU's Alpha, Inc., (the "Debtor"), respectfully opposes the Motion to Quash (the "Motion") filed by Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, and Camshaft Capital Management, LLC (collectively, "Movants").  The Motion improperly seeks to quash the Debtor's straightforward non-party subpoena (the "Subpoena," Ex. A to Van Tol Decl.) served on Movants' custodian of records, Apex Fund Services (Indiana), Inc. ("Apex"), and which was issued out of a half-billion-dollar adversary proceeding pending in the U.S. Bankruptcy Court for the District of Delaware (the "Delaware BK Court"), *BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP*, Case No. 24-50013 (JTD) (Bankr. D. Del.) (the "Adversary Proceeding").

## PRELIMINARY STATEMENT

On March 14, 2024, the Delaware BK Court sanctioned Movants and their founder (and apparently only employee) William Cameron Morton for their failure to "comply with this Court's order to produce the information requested by the Debtor." Ex. 1[1] (Mar. 14, 2024 Order on Finding of Contempt) at 3.  In mid-2022, Movants, which operate a sham hedge fund once run out of an IHOP restaurant in Miami, had received $533 million from the Debtor's former management. Following a change of control, on February 1, 2024 (the "Petition Date"), Movants facilitated another fraudulent transfer of those same funds to a "non-US trust" controlled by the Debtor's former management.  For weeks, Movants hid the transfer from the Debtor and the Delaware BK Court, and, when the truth finally came out, Movants refused, *repeatedly*, to name the "non-US trust," and produce other critical information, in violation of the Delaware BK Court's discovery orders.  In the Delaware BK Court's own words, Movants were "deliberately stonewalling any attempt to ascertain the location of the funds[,]" and had made a "brazen insistence on concealing

---

[1]  Ex. _ refers to exhibit attached to the Declaration of Benjamin I. Finestone in Opposition to Camshaft's Motion to Quash Debtor's Non-Party Subpoena, filed concurrently with this Memorandum of Law.

the location and control of this money[.]"  Ex. 2 (Apr. 3, 2024 Memorandum Opinion Issuing Contempt Order) ("Opn.") at 23.  The Court sanctioned Movants and Morton each in the amount of $10,000 per day until they produce the compelled discovery and further issued a bench warrant for Morton's arrest.  Ex. 1 at 3-4.

Four weeks and over $600,000 in unpaid fines later, Movants remain in contempt.  Morton left the United States, and remains a fugitive.  The Debtor **still** does not know what happened to the $533 million, where the money is, and how much of it remains.  Although the Debtor obtained a preliminary injunction freezing Movants' (and their co-Defendants') ongoing misuse of the $533 million, wherever it is, *see* Ex. 3 (Mar. 18, 2024 Order Granting Debtor's Motion for a Preliminary Injunction) at 2, the Debtor will find it challenging to practically safeguard, and ultimately recover, the money so long as their whereabouts remain undisclosed.

Unable to obtain the truth from Movants, on April 5, 2024, the Debtor served subpoenas on Apex.  Based on Movants' SEC filings, Apex is a key source of relevant documents—it is Movants' self-reported books and records custodian and former fund administrator, with possession of Movants' "register of investors, the records of investors contributions, . . . [and] client's general ledger and audited financial statements."  Ex. 4 (Mar. 29, 2024 Form ADV) at 3 (cleaned-up).  From these documents, Apex will know who received the $533 million on February 1, 2024, and possess other material information about the historical arrangements between Movants and the Debtor's former management, all core subjects of the Adversary Proceeding.

It is against this backdrop that the contemnors, Movants, moved to quash, and additionally sent an improper letter to Apex threatening litigation if it complied with a lawful subpoena.  These tactics should be viewed for what they truly are: Movants' ongoing efforts to conceal the Debtor's money's location.  There is no merit to any of Movants' three arguments in their Motion:

*First*, Movants summarily assert, without a shred of evidence, that the subpoenaed documents raise confidentiality concerns.  The details about the transfer and location of the Debtor's $533 million, of course, are **not** confidential, and the balance of the requested documents—*e.g.*, agreements with the Debtor's former management, communications concerning the Debtor's former management and the transactions at issue, and Movants' financial statements—are no more intrusive than documents typically sought in commercial litigation.  In any event, the Debtor and Movants already entered into a Protective Order covering non-party productions, Ex. 5 (Protective Order) § 3, thus eliminating Movants' confidentiality concerns.

*Second*, Movants argue that the requested documents are "overbroad."  But the standard for relevance is broad, and the requested documents are tied to, and proportional with, the Debtor's $533 million fraudulent transfer (and other) claims against Movants and their co-Defendants.  As just one example, the Debtor intends to establish that Movants are a sham hedge fund, which bears on the intent of the Debtor's former management in choosing to transfer $533 million to Camshaft Capital Fund—as opposed to an established asset manager, such as Vanguard—and also the value of the limited partnership interest in Camshaft Capital Fund that the Debtor received, which bears on the issue of reasonably equivalent value.  *See* Ex. 6 (Feb. 28, 2024 TRO Brief) ¶¶ 19-43 (summarizing the extensive evidence revealing that Camshaft Capital Fund is a sham).  Apex, as Movants' custodian and former administrator, will have relevant, material documents bearing on whether Camshaft Capital Fund is a sham.

*Third*, Movants argue that their forthcoming filing of a motion to dismiss is a sufficient ground to quash the Subpoena.  As a matter of law, this argument has been repeatedly rejected by courts in this Circuit.  And on the facts, this argument was discarded by the Delaware BK Court when it granted expedited discovery.  It further makes no practical sense in this case.  The

Delaware BK Court already found that the Debtor's claims have a likelihood of success, and the requested discovery also is relevant to the Debtor's claims against its former management (co-Defendants in the Adversary Proceeding) who chose to answer the complaint, not move to dismiss.

For all of these reasons, Movants are seeking to conceal the truth, not advance any legitimate concerns that either they or Apex have.  The Court should promptly deny the Motion, so that the Debtor can **finally**—and without further delay—learn the location of the $533 million, among other material information[2].

## BACKGROUND

### I.    The Debtor Defaulted On The $1.2 Billion In Term Loans.

The Debtor is a special purpose financing vehicle formed by its former ultimate corporate parent, Think and Learn Private Limited ("T&L"), whose three-member board consists of family: founder Byju Raveendran, his wife, Divya Gokulnath, and his younger brother Riju Ravindran. Opn. at 2-3.  The younger brother, Ravindran, served as the Debtor's sole director and officer until March 3, 2023.  *Id.*

In November 2021, the Debtor (as borrower) and T&L and certain affiliates (as guarantors) closed on a $1.2 billion term loans facility memorialized in various loan documents, including a Credit and Guaranty Agreement (the "Credit Agreement").  However, the Debtor defaulted on the Credit Agreement in March 2022, within four months of its execution.  *Id.* at 2.  By October 2022, there were at least four defaults on the Credit Agreement, empowering the term loan lenders (the "Lenders") to instruct their agent, GLAS Trust Company LLC ("GLAS"), to exercise remedies

---

[2]    As the Debtor also served the Subpoena on Apex in Indiana, Movants filed a near-identical motion to quash the Subpoena in the United States Bankruptcy Court for the Southern District of Indiana (Case No. 1:24-mp-56003).  A hearing on the motion to quash is scheduled for April 25, 2024.

under the Credit Agreement.  GLAS exercised those remedies on March 3, 2023, taking control of

the Debtor and replacing Ravindran with Timothy R. Pohl (the former co-head of Skadden's

restructuring practice).[3]  *Id.* at 2-3; *see also* Ex. 7 (Declaration of Timothy Pohl) (the "Pohl

Decl.") ¶¶ 38-41.

## II.    Camshaft Facilitated At Least Three Fraudulent Transfers Of The Debtor's Money.

On the heels of two defaults, in late April 2022, Ravindran and T&L caused the Debtor to

transfer over $533 million of cash (the "Alpha Funds") to Movants, in exchange for a limited

partnership interest in one of them, Camshaft Capital Fund (the "Camshaft LP Interest").  Opn.

at 2-3.  As the Delaware BK Court recognized, "certain facts bring Camshaft's legitimacy into

serious question[,]" including that "[t]he address for its principal place of business, supplied by

Camshaft to the SEC, is actually the address of an IHOP in Miami."  Opn. at 4.  This is the ***first***

fraudulent transfer.

In March 2023, when the Lenders were about to take control of the Debtor, Movants

facilitated Ravindran's and T&L's transfer of the Camshaft LP Interest to another T&L subsidiary

controlled by Ravindran—Inspilearn LLC ("Inspilearn").    Ex. 8 (Camshaft's Interrogatory

Answers) ("Answer to Interrog. No. 2") at 5.  Movants have valued the Camshaft LP Interest as

worth almost $540 million as of March 2023.  *Id.*  In exchange for over half a billion dollars of

value, **the Debtor received nothing**.  Ex. 9 (Transcript of Preliminary Injunction Hr'g) 24:21-

25:6, 56:10-15.  This is the ***second*** fraudulent transfer.

On February 1, 2024, the very day that the Debtor filed for bankruptcy (the "Chapter 11

Case"), Movants facilitated Inspilearn's transfer of the Camshaft LP Interest to an offshore trust,

---

[3]    After a trial, in November 2023, the Delaware Court of Chancery affirmed Pohl's
appointment.  Final Order and Judgment, *Glas Tr. Co. LLC v. Ravindran*, C.A. No. 2023-0488-
MTZ (Del Ch. 2023).  Opn. at 3.

presumably in an effort to move the funds away from the jurisdiction of the U.S. courts.  Ex. 8 at 4 ("Answer to Interrog. No. 1").  Camshaft refused to disclose the identity of that offshore trust despite repeated court orders then sanctions.  This is the ***third*** fraudulent transfer (and there appears to have been at least one more fraudulent transfer).

### III.    Camshaft Refused To Disclose Highly-Material Information About The Alpha Funds Despite Being Ordered To Do So And Being Held In Contempt Of Court.

After Pohl took charge of the Debtor in March 2023, his investigation uncovered the first fraudulent transfer to Movants.  Pohl Decl. ¶¶ 68-71.  Pohl then contacted Movants for details about the transfers, which Movants refused to provide.  *Id.* ¶¶ 78-79.  Instead, Movants (while still holding the Alpha Funds) sued the Debtor, seeking a declaration that they did not have to disclose any information about the Alpha Funds.  *Id.* ¶ 80.

On February 2, 2024, the day after the Debtor filed for bankruptcy, it commenced the Adversary Proceeding against Movants.  Opn. at 3.  The Debtor's Complaint (as amended on February 28, 2024, Ex. B to Van Tol Decl. ("AC"))[4] includes claims for actual and constructive fraudulent transfers of the Alpha Funds and the Camshaft LP Interest, because, *inter alia*, Camshaft Capital Fund is a sham hedge fund and there was no legitimate reason for the Debtor to select it to receive the $533 million Alpha Funds.  AC ¶¶ 132-155.  With the Alpha Funds at near-term risk of dissipation, on February 16, 2024, the Delaware BK Court granted the Debtor's motion for expedited discovery to locate the money.  *See* Opn. at 4.  In expediting discovery, the Delaware BK Court specifically considered and rejected Movants' argument that their pending or forthcoming motions to dismiss the bankruptcy petition or the Adversary Proceeding would stay

---

[4]    Subsequently, on April 5, 2024, the Debtor further filed a motion for leave to file a Second Amended Complaint, in which the Debtor has sought to assert, among other new claims, claims against T&L to account for its roles in all the fraudulent transfers.  The existing claims against Movants remain.  This motion is currently pending.

discovery.  Ex. 10 (Feb. 16, 2024 Hr'g Tr.) 35:3-8 (finding the "fact that parties may seek to dismiss the bankruptcy case or seek to dismiss the adversary proceeding, or both, [] not dispositive of whether or not I can allow discovery to go forward," given the Court's "concerns").

Movants did everything in their power to stonewall.  This was not lost on the Delaware BK Court, which found the record before it "replete with examples of Camshaft deliberately stonewalling any attempt to ascertain the location of the [Alpha Funds][,]" culminating in Movants and Morton being held in contempt of court.  Opn. at 9, 23 (emphasis added).  Movants' frustration of legitimate discovery has been non-stop:

- On February 5, 2024, the Delaware BK Court held the first day hearing.  It inquired into the whereabouts of the Alpha Funds and instructed Movants to meet and confer with the Debtor.  Movants failed to do so.  Movants further concealed from the Delaware BK Court that they just transferred the Alpha Funds out of the United States on the Petition Date.

- On February 16, 2024, the Delaware BK Court expedited discovery, requiring Movants to produce documents and answer interrogatories about the whereabouts of the Alpha Funds.  Opn. at 4.

- On February 23, 2024, Movants merely disclosed that they had approved the transfer of the Alpha Funds on February 1, 2024 to an "non-US trust."  Ex. 8 (Answer to Interrog. No. 1) at 4.  Movants refused to identify, among other critical information, the name and jurisdiction of the offshore trust and location of the Alpha Funds.  *Id.*; *see also* Opn. at 4 (noting there were deficiencies in Camshaft's interrogatory responses).

- On February 27, 2024, the Delaware BK Court again instructed Movants to produce documents responsive to the Debtor's expedited discovery requests.  But Movants refused, instead filing a motion for a protective order.  *Id.* at 4-5.

- On March 1, 2024, the Delaware BK Court denied Movants' motion for a protective order, and ordered Movants *for a third time* to provide the information requested by the Debtor.  Movants had until the end of the day; they did not comply.  *Id.* at 5. Instead, Morton fled overseas that same day.  *Id.*

- On March 4, 2024, the Delaware BK Court held a status conference to address Movants' failure to comply with its March 1 order.  Morton failed to appear despite the Delaware BK Court's earlier recommendation that he do so.  *Id.*  During the status conference, Movants' counsel confirmed their intentional violation of the court order, as Morton "declined" "to produce the information."  *Id.* 5.  The Delaware BK Court then issued a Show Cause Order, setting a show-cause hearing for March 14, 2024 that required Morton's attendance in person.  *Id.* at 6.

- Morton failed to appear on March 14, 2024. *Id.* at 6-7. Neither did he and Movants produced any of the required discovery. *Id.* at 7. The Delaware BK Court therefore held them in contempt. *Id.*; Ex. 1.

Also on March 14, 2024, the Delaware BK Court issued a Preliminary Injunction Order, freezing the Alpha Funds, after finding that the Debtor has established likelihood of success on its fraudulent transfer claims against Movants and their co-Defendants and that the Alpha Funds were at imminent risk of dissipation. *See generally* Opn. at 17-24.

## IV.    The Debtor Issued The Apex Subpoena To Finally Locate The Alpha Funds.

In part due to Movants' ongoing refusal to provide ordered discovery and the risk of irreparable harm if the Alpha Funds are not promptly located, on April 4, 2024, the Debtor issued the Subpoena to Apex, the acknowledged entity where Movants' "books and records [are] kept." Ex. 4 at 3. The 13 requests in the Subpoena are focused on central questions in the Adversary Proceeding, including: the sham nature of Movants' hedge fund operations, the value that the Debtor received in exchange for transferring away $533 million funds to Camshaft Capital Fund, Camshaft's coordination with T&L and its cohorts, the fraudulent transfers, and the whereabouts of the Alpha Funds. Specifically:

- Requests 1 and 11 seek agreements between Apex and Movants, and documents and communications regarding Apex's recent resignation as Movants' administrator, respectively.
- Requests 2-4 and 12-13 seek Movants' governance, organizational, and financial documents.
- Requests 5-6 seek documents and communications concerning the Debtor, the parties that directed the fraudulent transfers (T&L, Raveendran, Ravindran, and Gokulnath), and the subsequent transferee (Inspilearn).
- Requests 7-8 seek documents and communications concerning the investment of the Alpha Funds.
- Requests 9-10 seek information about every transfers of the Alpha Funds and the funds' current whereabouts.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 empowers parties to issue subpoenas commanding a non-party's production of discoverable materials.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1), which provides that 'parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) (quoting Fed. R. Civ. P. 26(b)(1)) (cleaned-up).  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."  *Ohio Dep't of Ins. v. RPM Mortg.*, 2020 WL 8513150, at *1 (S.D.N.Y. Dec. 2, 2020).

The party seeking to quash the subpoena "bears the burden of persuasion."  *Oasis Med., Inc. v. I-Med Pharma USA Inc.*, 2023 WL 6301728, at *12 (S.D.N.Y. Sept. 1, 2023).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014).  Additionally, a party seeking to quash a subpoena based on confidentiality concerns must demonstrate a specific harm that would arise as a result of disclosure.  *Id.* at *8; *In re Nielsen Co. (US), LLC,* 2020 WL 6130674, at *2 (S.D.N.Y. Oct. 16, 2020).

## ARGUMENT

Each and every one of Movants' three objections to the Subpoena is misguided and fails:

## I.    Movants Fail To Establish Legitimate Confidentiality Concerns.

Movants invoke Rule 45(d)(3)(B)(i) to object to the Subpoena because it calls for confidential/sensitive information—principally, the Camshaft-Apex "relationship," which is purportedly "subject to duties of confidentiality."  Mot. 6-7; *see also id.* at 4 (briefly referencing

concerns about those requests seeking information into "Camshaft's other investors" and "Camshaft's internal financial records").

This argument fails. For starters, many of the Debtor's requests do not implicate Movants' confidentiality concerns, *e.g.*, Camshaft Capital Fund's limited partnership agreement (to which the Debtor, under former management, was a party) (Request No. 2), communications concerning the Debtor and its former management (Request Nos. 5-6), and the details about the use and transfer of the Alpha Funds, ***including where the money is <u>today</u>*** (Request Nos. 7-10).

For those implicated requests, Movants, as the party "bear[ing] the burden of persuasion," fail to articulate any requisite "specific harm;" indeed, they provide no evidence beyond mere assertions of confidentiality, which is patently insufficient to invoke Rule 45(d)(3)(B)(i). *Oasis Med., Inc.*, 2023 WL 6301728, at *12 (denying motion to quash in part because the movant, "which bears the burden of persuasion, provide[d] no information at all concerning" the purported confidential information to establish its alleged privacy interest); *In re Nielsen Co. (US), LLC,* 2020 WL 6130674, at *2 (granting motion to compel because the objector failed to provide evidence to establish any harm resulting from disclosing its confidential scanner data subject to a protective order); *Refco Grp. Ltd., LLC*, 2014 WL 5420225, at *8 (S.D.N.Y. Oct. 24, 2014) (denying motion to quash because movants failed to "***identify any specific harm*** they will suffer as a result of production," and, as such, the subpoenaed documents are "unlikely to contain commercially sensitive information, ***particularly in light of the fact that [the subpoenaing party] is not a competitor of movants***") (emphasis added).[5]

---

[5] Movants' cases (Mot. 7) are inapposite. The *Arias-Zeballos* court quashed the subpoena, not because it sought private financial information, but because the information sought related to allegations already stricken from the pleadings and thus was not relevant under Rule 26(b)(1). *Arias-Zeballos v. Tan*, 2007 WL 210112, at*2 (S.D.N.Y. Jan. 25, 2007). Similarly, the subpoena

Here, despite asserting general confidentiality concerns, Mot. 4, 6-7, Movants point to **no documents** and **no specific facts** proving the legitimacy of its stated concerns, and certainly have not made the showing required to establish "trade secrets" under Rule 45(d)(3)(B)(i).  *See In re Madison Williams & Co., LLC*, 2014 WL 56070, at *5 (Bankr. S.D.N.Y. Jan. 7, 2014) (denying motion to quash because "boilerplate objections" asserting "trade secrets and other confidential business information" were insufficient).  Similar to *Refco*, far from being a competitor of movants, Pohl Decl. ¶ 24 (stating that the Debtor is a special purpose vehicle with no operations), the Debtor was a former client and limited partner in Movants, which (through former management) would have had a right to request and receive, or already had in its possession, a meaningful amount of the subpoenaed documents.

Regardless, Movants' entire argument is a red herring.  Contractual confidentiality clauses cannot defeat Rule 45 subpoenas.  *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (denying motion to quash even though the subpoenaed documents "covers contracts that contain confidentiality clauses").  Otherwise, a significant amount of discovery would be shielded by parties bilaterally agreeing that their communications are "confidential."  That is obviously not the law.

Finally, to the extent any information should be confidential, the parties negotiated a robust Protective Order, permitting "CONFIDENTIAL" and "ATTORNEY'S EYES ONLY" designations.  *See generally* Ex. 5.  Movants conspicuously omitted this critical fact, even though courts in this Circuit consistently deny motions to quash brought on confidentiality grounds when there is a protective order, as here.  *See, e.g. In re Accent Delight Int'l Ltd.*, 791 Fed. App'x 247,

---

in *Reserve Solutions, Inc. v. Vernaglia* was quashed on relevancy grounds, not on confidentiality grounds.  2006 WL 1788299, at *2 (S.D.N.Y. June 26, 2006).

252 (2d Cir. 2019) (confidentiality concerns "could be resolved through a protective order"); *Oasis Med., Inc.*, 2023 WL 6301728, at *12 (denying motion to quash in part because existing protective order is sufficient to protect the movant's confidentiality interest). As such, Movants' purported confidentiality concern "is obviated by the presence of the confidentiality agreement and protective order" in the Adversary Proceeding. *In re Currency Conversion Fee Antitrust Litig.*, 2004 WL 848171, at *1 (S.D.N.Y. Apr. 21, 2004) (granting motion to compel).

## II.    The Subpoena Seeks Plainly Related Information And Is Not Overbroad.

Movants conclusorily assert that the Subpoena is overbroad and unrelated to the claims and defenses in the Adversary Proceeding. Mot. 4, 7-8. According to Movants, the Subpoenas should be quashed in their entirety. *Id.* 10.

As a threshold matter, Movants "lack[] standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden." *Silverstone Holding Grp. v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F.Supp.3d 199, 202-03 (S.D.N.Y. Jan. 12, 2023); *see also Strike 3 Holdings,* 2023 WL 2775964, at *1 (denying motion to quash in part because "[c]ourts have consistently rejected the position that a party who is not the recipient of a subpoena can nonetheless challenge that subpoena because it creates an undue burden").

In any event, Camshaft's relevance objection lacks merit. Camshaft's own authority recognizes that, under Rule 45, "relevancy is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Reserve Solutions, Inc. v. Vernaglia*, 2006 WL 1788299, at *1 (S.D.N.Y. June 26, 2006). Here, each request in the Subpoena seeks information that is plainly relevant to the Debtor's fraudulent transfers and fiduciary claims against Movants and their co-Defendants:

- **Apex-Camshaft relationship.** Requests 1 and 11 seek agreements between Apex and Movants, and documents and communications regarding Apex's resignation as Movants' fund administrator (which occurred on March 7, 2024, Mot. 4),

respectively.  Discovery into the relationship and arrangement between Apex and Movants is probative of the Debtor's allegation that Camshaft Capital Fund is a sham hedge fund, AC ¶¶ 46-68, along with Camshaft's asserted "mere conduit" defense, *i.e.*, that it was acting like a bank, not a hedge fund, when it held the Alpha Funds and lacked any control over the use of the money.  *See* Opn. at 19. Additionally, Apex's resignation came just eight days after the Debtor filed a 40-page brief in the Adversary Proceeding (Ex. 6) laying out the results of its sweeping investigation into Camshaft Capital Fund, suggesting that Apex came to its own conclusion that Camshaft Capital Fund was illegitimate.

- **Movants' governance, organizational, and financial documents.**  Requests 2-4 and 12-13 focus on Movants' governance, organizational, and financial documents. These documents are probative of the Debtor's allegation that Camshaft Capital Fund is a sham hedge fund, Movants' "mere conduit" defense, the relationship between Movants and the Debtor's former management, and the value of the limited partnership interest in Camshaft Fund that the Debtor received.  AC ¶¶ 46-68, 135-37, 143-47; Opn. at 19.  Indeed, the Debtor expects that responsive documents will establish that: (1) Movants offered no protection to investors, (2) Movants were nothing like a bank, (3) Movants failed to comply with regulatory requirements, (4) Movants' principal "investments" from the Debtor, and (5) Movants never had any material investors outside of T&L and its subsidiaries and their principal source of management fees came from the Debtor, so Movants are beholden to Ravindran and his family.

- **Communications concerning key actors.**  Requests 5-6 are tailored toward seeking documents concerning the key actors in the Adversary Proceeding: the rightful owner of the Alpha Funds (the Debtor), the entity and people who instructed and effectuated the fraudulent transfers (T&L, Byju Raveendran, Riju Ravindran, and Divya Gokulnath) and other transferees (Inspilearn).  Opn. 16, 18, 22-23.  Because these requests are directed to the administrator of the very subject matter at issue—the $533 million Alpha Funds—they are all relevant to the claims and defenses that are at issue.

- **Investment of the $533 million.**   Requests 7-8 seek documents and communications concerning the investment of the Alpha Funds, which are relevant to considerations of reasonably equivalent value—*i.e.*, the value of the limited partnership interest in Camshaft Capital Fund that the Debtor received—the Debtor's former management's intent in "investing" in Movants, and whether the Movants' above-market 3% annual management fee effectively incorporated a kickback for concealing the $533 million.  *See* AC ¶ 135.  Documents concerning the process by which determinations were made regarding the investment of the Alpha Funds, along with the substance of those investments, also is relevant to Debtor's allegations that the Debtor's former management transferred the funds to Camshaft not to invest, but to conceal.

- **Transfer of the $533 million.**  Requests 9-10 seek answers to central questions underpinning the Debtor's fraudulent transfer claims: when each fraudulent transfer

occurred, how these fraudulent transfers occurred, who received and benefited from those transfers, and where the money went.[6]

Movants argue that Requests 7-10 are overbroad, because they are not strictly relevant to the Debtor's claims against them. Mot. 4. That argument is incorrect for several reasons. *First*, the Delaware BK Court explicitly rejected this argument when Movants previously—and improperly—objected to discovery against them on similar grounds. Ex. 11 (Mar. 1, 2024 Hr'g Tr.) 4:3-6:11, 17:16-23. *Second*, Movants' ongoing concealment and control of the Alpha Funds after the original transfer satisfies "badges of fraud" relevant to determining the Debtor's actual fraudulent transfer claim, *see In re Vaso Active Pharms., Inc.*, 2012 WL 4793241, at *12-13 (Bankr. D. Del. 2012) (concealment of transfer for far less time than here—"approximately one month"—"overwhelmingly" supported this badge of fraud); and further is relevant to Movants' defenses, such that it is a "mere conduit" without an interest in and control of the Alpha Funds. Ex. 11 (Mar. 1, 2024 Hr'g Tr.) 4:10-19. *Third*, Discovery is permissible regardless of whether the discovery sought is probative of claims against Movants or claims against other defendants. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *see Malibu Media,* 2016 WL

---

[6]   Camshaft's cases (Mot. 8) are inapposite. In *Arias-Zeballos v. Tan*, the court quashed subpoenas related to allegations that had been stricken from the complaint, and were therefore "in tension with determinations made by the court"—which is clearly not the case here. 2007 WL 210112, at *2 (S.D.N.Y. Jan. 25, 2007). The court in *In re Flag Telecom Holdings, Ltd. Sec. Litig.* held that the subpoena is unlikely to lead to relevant evidence because the party itself had already produced over 4,000 pages of documents related to the topics in the subpoena, documents which the court *already* determined were irrelevant. 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006). Here, Movants refused to produce court-ordered discovery and are still in contempt. Moreover, the subpoena in *Reserve Solutions* sought the entire personal credit card records of an individual defendant without any limitations. 2006 WL 1788299, at *2. Here, all of the subpoena topics relate to the Debtor's specific allegations, thus are clearly distinguishable from *Reserve Solutions*.

5478433, at *4 (permitting discovery even if the party might not be the actual infringer against whom the plaintiff's claim was asserted). Movants' own authority already foreclosed Movants' own argument, because under Rule 45, discovery can be sought on "*any* matter" that "could bear on *any* issue that is or maybe in the case"—not just claims asserted against Movants. *Reserve Solutions,* 2006 WL 1788299, at *1. As such, Requests 7-10 are plainly relevant because they at least bear on Debtor's fraudulent transfers and breach of fiduciary duty claims against Movants' co-Defendants (namely, Defendant Inspilearn, another one of the fraudulent transfer defendants, and the Debtor's former sole director and officer, Defendant Ravindran).

For each of these reasons, Camshaft's Motion should be denied. *See Refco Grp. Ltd.,* 2014 WL 5420225, at *8 (denying motion to quash because the materials sought were relevant under Rule 26(b)(1)).

**III.    The Pending Motions To Dismiss Do Not Stay Discovery, Let Alone Justify Quashing the Subpoena.**

Movants advance the sweeping position that the mere filing of a motion to dismiss justifies quashing the Subpoena as "premature." Mot. 2, 8. But that is not the law because "whether Defendant ultimately has meritorious defenses to Plaintiff's claims is not relevant" for purposes of deciding a motion to quash. *Malibu Media, LLC v. Doe*, 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016) (collecting cases); *see generally Strike 3 Holdings,* 2023 WL 2775964, at *2 ("Defendant's general denial of liability is not a proper basis for quashing a subpoena") (internal citations omitted).

Indeed, Movants' argument, if accepted, effectively grants an automatic discovery stay, because every litigant can argue that their motion to dismiss—no matter how frivolous[7]—could theoretically moot the need for discovery, including under Rule 45.  Courts in the Second Circuit have consistently rejected such attempts to stall discovery.  *See, e.g.*, *Medina v. City of New York*, 2020 WL 3050971, at *2 (S.D.N.Y. June 8, 2020) ("discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed") (internal citation omitted); *Zou v. Han*, 2024 WL 707285, at *4-6 (E.D.N.Y. Feb. 21, 2024) (denying motion to quash subpoena and to stay its compliance notwithstanding defendants' anticipated motion to dismiss).[8]

If Movants want a stay of discovery because they moved to dismiss the Chapter 11 Case[9] and/or will be moving to dismiss the Adversary Proceeding, then they need to make that request of the Delaware BK Court.  But the Delaware BK Court already considered and rejected Movants'

---

[7]  Movants' motions to dismiss are clearly meritless, because the Delaware BK Court—in issuing the Preliminary Injunction Order—already rejected the meritless defenses that Movants advanced in their motions.  Opn. 19–20.

[8]  Movants rely on a dicta in an out-of-District decision—*McNamee, Lochner, Titus & Williams, P.C. v. Mayorga*—for the proposition that the filing of motion to dismiss can be grounds to quash nonparty subpoena.  2013 WL 4520671, at *5 (N.D.N.Y. Aug. 26, 2013).  However, *McNamee* is distinguishable because the court quashed the subpoena on the basis that the issuing party's discovery request was not even "within the scope of Rule 26(b)(1)."  *Id.* at *4.  More importantly, the *McNamee* court stayed discovery pending the resolution of motion to dismiss only after finding "good cause" (*id.* at *5)—which clearly does not exist here, given Movants' ongoing violation of the discovery orders and the imminent risk of dissipation of the Alpha Funds.

[9]  In any event, Movants' motion to dismiss the Chapter 11 Case lacks merit, because Movants, defendants to fraudulent transfer and not creditors (or other stakeholders) of the Debtor, lack the "party in interest" standing to move to dismiss the Chapter 11 Case under 11 U.S.C. § 1112(b).  Moreover, Movants cannot reasonably dispute that the Debtor, in real financial distress (in large part as a result of fraudulent transfers that Movants facilitated) filed the Chapter 11 Case to maximize the value of the estate.  Pohl Decl. ¶¶ 65, 86, 98; *see also* Ex. 9 at 176:22-25 (the Delaware BK Court observing that "BYJU's Alpha was left with no money" after the fraudulent transfers).  Additionally, the Chapter 11 Case is far from a two-party dispute as asserted by Movants in their motion, because the Case involves at least the Debtor, its lenders and GLAS, Movants, Inspilearn, and also houses the Debtor's breach of fiduciary claim against its former management.

argument that discovery is premature—particularly given the Delaware BK Court's concern regarding the whereabouts of the Alpha Funds.  Ex. 10 (Feb. 16, 2024 Hr'g Tr.) 35:3-8.  The Delaware BK Court's concern is exacerbated by Movants' continued concealment of the information regarding the Alpha Funds and ongoing violation of the court's discovery orders. Additionally, Movants' co-Defendants answered the currently-operative Amended Complaint, so the Debtor's Subpoena to Apex is relevant to claims that will proceed regardless of Movants' motion to dismiss the Adversary Proceeding.  As such, Movants' argument is nothing but another delaying tactic, thus it must be rejected.

## **CONCLUSION**

WHEREFORE, for these reasons, the Debtor respectfully requests that Movants' Motion promptly be denied.

Dated: New York, New York  
      April 15, 2024

_/s/ Benjamin I. Finestone_  
Benjamin I. Finestone

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**  
Susheel Kirpalani  
Benjamin Finestone  
Daniel Holzman  
Jianjian Ye  
51 Madison Avenue, 22nd Floor  
New York, New York 10010  
Tel.: (212) 849 7000  
susheelkirpalani@quinnemanuel.com  
benjaminfinestone@quinnemanuel.com  
danielholzman@quinnemanuel.com  
jianjianye@quinnemanuel.com

*Counsel for Debtor, BYJU's Alpha, Inc.*